UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORIE BIGGS and JAMIE MERCURIO,   CASE NO. 15-cv-10131
                                  HONORABLE GEORGE CARAM STEEH
        Plaintiffs,

  v.

UNIVERSITY OF MICHIGAN,

        Defendant.[1]
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #15)**

Plaintiffs Lorie Biggs ("Biggs") and Jamie Mercurio ("Mercurio") (collectively, "plaintiffs") bring this action against the University of Michigan ("U of M" or "defendant") alleging retaliation in the workplace for complaining about sexual harassment. The remaining counts alleged in the complaint are: count II- retaliation under Title VII, and count IV- retaliation under Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").[2]  Now before the court is defendant's motion for summary judgment.  (Doc. #15).  The court

---

[1] The complaint names both the University of Michigan and the University of Michigan Board of Regents as defendants.  The motion for summary judgment seeks dismissal of the Board of Regents because it is the same entity as the University of Michigan.  Plaintiffs do not oppose the dismissal of the Board of Regents.  Thus, the court amends the case caption to reflect one defendant: the University of Michigan.

[2] Plaintiffs do not oppose summary judgment on the remaining counts: count I- sexual harassment hostile work environment under Title VII, and count III- failure to accommodate under the Americans with Disabilities Act.  Thus, the court grants defendant summary judgment on these counts.

dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, defendant's motion for summary judgment will be granted in part and denied in part.

## I. BACKGROUND

The facts that follow and the inferences that can be drawn from those facts are taken in a light most favorable to the plaintiffs, as the court must do in ruling on a motion for summary judgment.

### A. Plaintiffs' Employment With U of M

Plaintiffs were both hired by U of M as health care billing/patient account specialists in U of M's call center; Biggs in November of 2010, and Mercurio in April of 2012.[3] The main job duties for account specialists in the call center are to make or receive phone calls to and from patients in the U of M health system to ensure patient and billing information is collected in advance of scheduled medical appointments. Patient contact by telephone takes place approximately 28 days ahead of a scheduled medical appointment.

Plaintiffs were supervised by the call center supervisor. Cindy Blackburn ("Blackburn") was the call center supervisor until November of 2011. From November of 2011 until the fall of 2012, Jenny Wilson ("Wilson") was the call center supervisor. Following Wilson, beginning in the fall of 2012, Steve Sonnett ("Sonnett") became the call center supervisor.[4]

---

[3] Mercurio actually began as a temporary employee in April of 2011. However, she was hired as a full-time regular employee a year later in April of 2012.

[4] Defendant disagrees with plaintiffs about the time periods of each supervisor. Because the matter is before the court on defendant's motion for summary judgment, the court draws the inferences in favor of plaintiffs.

In addition to the call center supervisor, Donna Navarre ("Navarre") served as a call center lead/coordinator. Plaintiffs contend that, in this role, Navarre assumed all supervisory roles except for conducting performance evaluations. In other words, Navarre was responsible for overseeing the agents and making sure the call center ran smoothly. Defendant disputes that Navarre had any supervisory responsibility. Defendant says that Navarre was responsible only for monitoring registration agent contact with patients through her computer, and that agents would first come to her when seeking paid time off. Other than that, defendant contends that Navarre had no supervisory responsibility.

Plaintiffs testified that, throughout their employment with defendant, they were praised about their performance, until they started complaining that they were being sexually harassed by a co-worker.

### B.   Incidents With Co-Worker Richard Page

One of plaintiffs' co-worker's at the call center was Richard Page ("Page").

Biggs contends that she was sexually harassed by Page. Biggs says she first complained about Page when Wilson was her supervisor, sometime between 2011 and 2012. Specifically, Biggs complained that Page was taking pictures of her inside her cubicle without her consent. Biggs thought Page was pointing the camera at her body, and, therefore, that the pictures were sexual in nature. Page denied taking any pictures of Biggs. Biggs says that, after she complained about Page, Wilson told her that Page was "not right in the head" and that a former employee left because Page had taken similar pictures of that employee. Wilson denies that Biggs talked to her about Page. Biggs testified at her deposition that, after she spoke with Wilson, Page stopped taking pictures of her.

After Wilson's tenure as call center supervisor, around January of 2013, plaintiffs contend that they both began to complain about Page to Navarre. Biggs testified that Page sent her an instant message stating that he wanted to "whacka whacka boom boom" Biggs, Mercurio, and Navarre, and that he had already "whacka whacka boom boomed" Navarre the prior night. In addition, Page allegedly told Biggs that he wanted to kiss her and Mercurio. Biggs showed one of Page's messages to Mercurio; Mercurio testified that the message said that Page wanted to "whacka whacka boom boom" her, without any mention of Biggs or Navarre. Biggs repeatedly asked Page to stop sending her messages of a sexual nature, to no avail.

When the messages continued, plaintiffs say they complained to Navarre again. Plaintiffs contend that Navarre told them that Page had previously been disciplined for similar conduct. Navarre denies plaintiffs' assertions that they ever complained to her about Page.

At her deposition, Biggs testified that, not only did she complain to Navarre, but Navarre instructed Biggs not to say anything to Sonnett, who at the time was the call center supervisor. Biggs says that Navarre told Biggs that Navarre had talked to Sonnett about Biggs's complaints and that they would be handled appropriately.

Biggs testified that her relationship with Navarre began to change when she continued to complain about Page. Around the fall of 2013, Biggs contends that she complained to Navarre about another co-worker named Greg. Biggs told Navarre that Greg regularly stared at the plaintiffs when they walked past Greg's workspace. According to Biggs, Navarre told her that plaintiffs should throw a pen on the floor when they are in front of Greg "and bend over and give him a show."

### C. The Dropped Calls

Some time after complaining about the alleged sexual harassment, plaintiffs contend that they began experiencing problems with their headsets. At their depositions, plaintiffs explained that their headsets needed to be charged overnight in order to operate correctly the next day. Despite placing the headsets to charge before leaving for the day, plaintiffs said they returned in the mornings with the headsets off of the chargers, and that they would lose power in the middle of being used due to not being fully charged. This resulted in phone calls that plaintiffs were involved in being dropped when the headsets failed. Biggs contends that she complained to Navarre about plaintiffs' headsets being taken off the chargers overnight, but that it was not until Biggs threatened to install a "nanny cam" that the problem subsided. After several months, the problems with the headsets resurfaced. Despite complaining about the headset issues, plaintiffs contend that they were disciplined for allegedly purposefully hanging up phone calls.

Defendant contends that, around December 2013, Navarre began monitoring plaintiffs' phone calls because she determined that plaintiffs were making a high volume of phone calls that would have been impossible to make, i.e. "short calls." Navarre reported the findings to her supervisor, Sonnett. Sonnett generated a report for the entire call center showing the amount of time spent on incoming and outgoing calls. The report showed that plaintiffs' calls were abnormally shorter than the rest of the call center— many of the outgoing calls were less than 20 seconds, and incoming calls were between 0-2 seconds.

Based on the findings in the report, Navarre was instructed to monitor plaintiffs' phone calls (by listening in). During her monitoring of plaintiffs' phone calls, Navarre says

that she heard the plaintiffs hanging up on patients.  Disciplinary review conferences were scheduled with human resources.  At there respective meetings, plaintiffs were asked why the amount of short calls they had were much higher in percentage than the remainder of call center staff.  Ultimately, it was determined that discipline was necessary.  Biggs was fired.  Mercurio was given a two day disciplinary layoff without pay.  Defendant says that, when Mercurio returned to work, her short call percentage greatly improved and became in line with the remainder of the call center staff.

Plaintiffs point to the fact that another employee, Chelsea Cook, had a similar rate of high dropped calls, but that she did not receive any discipline other than a verbal warning.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence from which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### III. DISCUSSION

The dispute in this case centers around one main issue: whether the plaintiffs were terminated for intentionally hanging up on patients, i.e. making "short calls," or whether

-7-

their headsets were deliberately taken off of the chargers to sabotage their calls, in retaliation for complaining about sexual harassment. Drawing all reasonable inferences in favor of the plaintiffs, there are genuine issues of material fact that preclude summary judgment.

The court has recently explained the relevant standards for addressing a sexual harassment retaliation claim under Title VII and the ELCRA:

> To establish a prima facie case of sexual harassment retaliation under Title VII and the ELCRA, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer knew about the plaintiff engaging in the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Fuhr v. Hazel Park Sc. Dist.*, 710 F.3d 668, 675 (6th Cir. 2013); *Wasek v. Arrow Energy Serv., Inc.*, 682 F.3d 463, 468–69 (6th Cir. 2012).
>
> In the absence of direct evidence of retaliation, the well-familiar *McDonnell Douglas* burden shifting framework applies to Title VII and ELCRA cases. *Cuddington v. United Health Serv., Inc.*, 826 N.W.2d 519, 525–26 (Mich. Ct. App. 2012). That is, once a plaintiff establishes a prima facie case of retaliation, the defendant must offer an alternative, non-retaliatory reason for the employment action. *Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). If the employer proffers a non-retaliatory reason for the employment action, the plaintiff must produce enough evidence for a reasonable juror to conclude that the employer's legitimate reason is pretextual because it either: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* at 597.

*Marotta v. Ford Motor Co.*, — F.Supp.3d —, 2015 WL 4756523, at *15 (E.D. Mich. 2015).[5]

---

[5] One argument made by defendant is that plaintiffs waived their ELCRA claims because they did not raise them in the response brief. The court disagrees. The Title VII and ELCRA retaliation claims are analyzed using the same standards. Thus, plaintiffs preserved their ELCRA claims.

### A. The Prima Facie Case

Defendant argues that plaintiffs have not established a prima facie case of retaliation because (1) they have not shown that defendant knew about the alleged sexual harassment, and (2) because of the passage in time between the last complaint about sexual harassment and the adverse employment actions, plaintiffs have failed to establish a causal connection between the retaliation and the adverse employment actions. Defendant does not challenge the remaining elements of plaintiffs' retaliation claim.

Defendant's argument ignores plaintiffs' testimony and the summary judgment standard. As to whether defendant knew about the alleged sexual harassment, plaintiffs' testimony makes clear that they complained to superiors (or at least people whom they reasonably believed were their superiors) on multiple occasions about sexual harassment allegedly suffered at the hands of two co-workers. Moreover, as explained above, Biggs testified at her deposition that Navarre confirmed that sexual harassment complaints were communicated to Sonnett, and, in fact, Navarre told Biggs that the plaintiffs did not need to go directly to Sonnett with their complaints. Defendant's best argument is that plaintiffs inaccurately recall the time period of each of their supervisors and that plaintiffs never complained to the correct supervisor about the alleged harassment. A reasonable juror may disagree after weighing all of the evidence.

In addition, despite plaintiffs' testimony that they complained to certain supervisors — Navarre and Wilson — defendant makes much of the fact that Navarre and Wilson deny the conversations occurred, and that all decision makers claim that they were unaware of any alleged sexual harassment. Again, the contradictory evidence establishes a genuine issue of material fact. Drawing all reasonable inferences in favor of the plaintiffs, a

reasonable juror may conclude that defendant was aware about the alleged sexual harassment.

Next, as to the causal connection, the court likewise finds that genuine issues of material fact preclude summary judgment. Defendant argues that there is no proximity in time between the alleged complaints made by plaintiffs and the adverse job actions. To accept defendant's position, however, would require ignoring plaintiffs' testimony that complaints about sexual harassment were ongoing, and, that after they began complaining, they suffered retaliation that was also ongoing. Indeed, as it relates specifically to the phone issues that were occurring, plaintiffs testified that, despite leaving their headsets on the chargers overnight, someone was taking them off of the chargers. Plaintiffs thought this was done in retaliation for complaining about sexual harassment. Drawing all reasonable inferences in plaintiffs' favor, a reasonable juror may find that there is a causal connection between the complaints of sexual harassment and the retaliation that ultimately ended in Biggs's termination and Mercurio's two-day disciplinary layoff.

### B.     Non-retaliatory Reason For Adverse Job Actions

Given that plaintiffs' prima facie case of retaliation is premised on circumstantial evidence, defendant argues that, even if plaintiffs have established a prima facie case, there is a non-retaliatory reason for the adverse action taken against plaintiffs. Specifically, defendant says that Biggs's firing and Mercurio's two-day disciplinary layoff was a result of plaintiffs' large percentage of short calls as compared with the rest of the call center staff. This resulted in plaintiffs showing that they had conducted more calls than they actually had legitimately completed. Defendant has come forth with a non-retaliatory reason for the adverse job actions.

### C.     Pretext

Defendant's non-retaliatory reason for taking the adverse job actions against plaintiffs shifts the burden to plaintiffs to show that the legitimate reason given by defendant was merely pretext for retaliation. Plaintiffs argue that they have met this burden by establishing a question of fact as to whether (a) defendant's stated reason had a basis in fact, or (b) actually motivated defendant's employment decisions. The court agrees that questions of fact exist requiring resolution by a jury.

Viewing the evidence in a light most favorable to plaintiffs, there is sufficient evidence for a reasonable juror to conclude that defendant's non-retaliatory reason was pretext for discrimination. As explained, a jury may conclude that plaintiffs were being discriminated against since beginning to complain about sexual harassment and that defendant ultimately manufactured a reason to terminate Biggs and issue a two-day disciplinary layoff to Mercurio. Indeed, there are questions centering around the actual reason plaintiffs had so many more short calls and hangups than their co-workers. If plaintiffs' testimony is believed by a jury, the reason for the short calls and hangups is because someone was deliberately sabotaging their headsets by taking them off of the chargers to ensure they would fail the following day. It is up to a jury to determine, after weighing the evidence and the credibility of the witnesses, whether defendant's non-retaliatory reason for taking action against plaintiffs was pretextual.

## IV. CONCLUSION

For the reasons explained above, defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Specifically, Counts I and III are DISMISSED, and Counts II and IV remain.

IT IS SO ORDERED.

Dated:  February 29, 2016

                                  s/George Caram Steeh
                                  GEORGE CARAM STEEH
                                  UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 29, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---